BENNETT v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

CARRIERS—EVIDENCE—NEGLIGENCE—JURY.

Plaintiff and one witness testified that plaintiff was thrown to the ground by a street car starting with a jerk after it had stopped to let her off. The conductor and gripman testified that she stepped down facing the opposite way before the car stopped, and that they called to her to wait till the car stopped. Two other witnesses testified that she fell or stepped off before it came to a full stop, and a third that she stepped off just as the car was coming to a standstill. *Held*, that the question of the company's negligence was for the jury.

Appeal from trial term, New York county.

Action by Isabella Bennett against the Third Avenue Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

This action was brought to recover damages for injuries received by plaintiff through the alleged negligence of the defendant's servants while she was a passenger on defendant's car. On the evening of July 10, 1896, at about 9 o'clock, the plaintiff boarded a Third avenue, uptown, open car at 35th street, and took the second seat from the front. Between 112th and 113th streets she signaled the conductor to stop at the next crossing, and, in alighting, she fell or was thrown to the ground and against one of the elevated railroad posts which was about 20 feet north of the crossing, and was so severely injured that she was taken to the hospital, where she remained till September 15, 1896, when she was discharged uncured. The plaintiff testified: "The car came to a full stop, and I started to get off. The car came to a full stop at 113th street, on the uptown side. * * * I got off and put my foot down on the step. I could not tell you anything more after that until some gentlemen lifted me up off the street;" that she did not know what happened after she put her foot on the step; that she struck the elevated post and became unconscious when she was knocked up against the abutment, but not till she struck the abutment. She was able to say, however, that after the time she put her foot on the step, and before she struck the abutment, the car moved. Edwin Schott testified for the plaintiff: That he was on the same car, seated on the third seat from the front; that between 112th and 113th streets the plaintiff signaled the conductor to stop, and at 113th street the car stopped; that "Mrs. Bennett arose out of her seat and walked to the platform. She arose from her seat when the car stopped, when it came to the crossing. I think I watched her getting off the car. She put her foot down on the step of the car, and in one hand she had a satchel, which she held around the rod, the brass rod; as she put the other foot on the street, the car gave a jerk, and she fell in the street against the post,—one of those elevated pillars. I got off the car and assisted the lady to the drug store, which was right on the corner. I stayed in the drug store until the policeman came." On cross-examination this witness said that he had been employed by the Third Avenue road, and was discharged in 1894 or 1895; that no reason was given why he was discharged; that he had no bad feeling towards the com-

pany; that he could not tell exactly how long he was out of employment, at what he was next employed, or how long he remained employed; that he had been in process-serving business and in collections, and had done considerable detective work. The testimony of physicians as to the serious nature of the plaintiff's injuries closed the plaintiff's case. The defendant's evidence consisted of the testimony of the conductor and the gripman, both of whom had resigned from the defendant's employ, and of three passengers on the car. The conductor testified: That he was signaled to stop, and pulled the bell rope; that the plaintiff, as the car was coming to a stop, stepped down on the running board that runs along the car and faced south; that he jumped down from the back platform and ran along the running board, and called to her to wait till the car had stopped, as he could see by her actions that she wanted to step off; that before he reached her "she stepped off the car. The car had not stopped yet. She landed on her feet, and then lost her balance and fell back and struck the elevated pillar. I assisted her to her feet and asked her what she did that for. She said, 'Why didn't you stop?' I said. 'You should have waited till the car stopped.' Then I got her name and address, and she walked away." The conductor further testified that he was the only one that lifted her up; that Mr. Schott did not do so; that the post was about four feet from her when she fell, and she fell back and struck her head against it; that the car stopped within two feet after she got off; that she did not seem to be seriously hurt. The gripman testified that he received the signal from the conductor to stop, and that his attention was called to the woman trying to get off, and that he called to her to wait a moment till the car stopped, but that she would not wait; that she stepped off the car and was facing south, and the car was then going at very slow speed; that he was about to stop at the crossing; that he brought up the car always so as to just clear the crossing; that the car was thirty-four feet long; that the car came to a stop after the plaintiff stepped off within about two or three feet; that the conductor had also called to her to wait till the car stopped. Thomas Leddy, a passenger, testified that the plaintiff signaled the conductor to stop the car; that the conductor pulled the bell, and before the car entirely stopped she jumped off; that the conductor, as she jumped off, was going up the side step to the front of the car, and called to her to stop; that she was facing south when she jumped off; and that the car came to a full stop afterwards within about two or three feet. Johanna Zwilling, who was also on the car, said that the plaintiff fell off because she did not wait for the car to stop; that it was about to stop, but it did not stop. Louis A. Kraus testified: That he saw the plaintiff signal, and that the car was coming to a full stop when she arose: that "she grabbed the stanchion at the side of the car there and was about to step off; then I heard somebody holler, 'Wait till the car stops.' I was looking and I saw the gripman with the grip, and I knew the power was off. I heard the brake, * * * the woman stepped down, * * * the car was about coming to a standstill, back she went and struck an elevated pillar. I got up. * * * The conductor was standing in front of the woman, asking her what her name was. I am positive he was talking to her." In rebuttal, the plaintiff denied that the conductor called to her not to get off the car, and testified that she saw the gripman turn around, but not when the car stopped; that he did not tell her to wait till the car stopped; that the car came to a full stop before she got off. Motion was made to dismiss the complaint on the ground that no negligence was shown on the part of the defendant, and furthermore for a direction of a verdict for the defendant on the ground that the evidence preponderates in defendant's favor. The motion was denied, and a verdict of $1,500 was returned for the plaintiff. Motion was then made for a new trial, and was denied. From the judgment entered in accordance with the verdict, and from the order denying the motion for a new trial, the defendant brings this appeal.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Clifford Seasongood, for appellant.
Henry Wendt, for respondent.

O'BRIEN, J. The single question was whether or not the car stopped. If it stopped, as the plaintiff claims, it should not have started again till she was quite clear from it. And, as there was a direct conflict as to the issue thus presented, clear and positive testimony being given both ways, the question was one properly to be submitted to the jury. In some respects this case resembles that of Martin v. Railroad Co., 3 App. Div. 448, 38 N. Y. Supp. 220, wherein it appeared, as stated by the headnote, "that the plaintiff, who was the only witness in her own favor, and was in effect contradicted by a number of witnesses for the defendant, testified that while she was about to leave a car which was at rest it suddenly. started, and she was thrown from the platform to the ground; that she did not see what started the car, nor could she state how far it moved." It was held that the case was properly submitted to the jury, and that its verdict must stand; the presiding justice, in the course of his opinion, saying:

"It is urged upon the part of the appellant that the only person who testified that the car moved or jerked says that she did not see what started it. The car having stopped, and the passengers being called upon to alight, if, in the act of alighting, the plaintiff was thrown from the car by a jerk of the car, it was necessary for the appellant to prove that it was not responsible for the happening of that movement in order to absolve itself from liability. It was not incumbent upon the plaintiff to say what caused the jerk. It was negligence upon the part of the appellant to allow the car to move while the passengers were in the act of alighting."

In the present case the plaintiff is supported by another witness, who, although he uses the words, "I think I watched her getting off the car," states the manner in which she put her foot down on the step, and testifies that the car gave a jerk, as the result of which the plaintiff fell against the elevated pillar. Although there were, exclusive of the conductor and gripman of the car, three passengers who testified in behalf of the defendant,—and their testimony must be regarded as disinterested,—it will be noted that their versions of how the accident occurred cannot be harmonized. Thus one of the passengers testified that the plaintiff, while facing south, jumped off the car; another, that she fell off "because she did not wait for the car to stop"; and the third, that she stepped down as the car was coming to a standstill. The evidence shows that the car did not move more than two or three feet from the place where the plaintiff fell or was thrown from the car; but it is not made clear whether the accident was caused, as the plaintiff claims, by the car stopping and then going ahead with a jerk, or whether, as may be inferred, the plaintiff was thrown from the side running board as she was about to step down, owing to a sudden application of the brake. If we exclude the testimony of the defendant's witness who said that the plaintiff jumped from the car, which statement is at a variance with the testimony given by all the other witnesses, there still remains a direct conflict as to the manner in which the injuries were received. According to the plaintiff and her witness, the car had stopped and then had started up again with a jerk, while the testimony of two of the passengers produced as witnesses for the defendant was that the plaintiff fell or stepped off the car before it had come to a full stop.

We think that there was not such a preponderance of evidence as would have justified a dismissal of the complaint or a direction for the defendant, nor such as would justify our setting aside the verdict. This case well illustrates the difficulty which is often to be found in accident cases where different minds may properly and naturally differ as to the inferences to be drawn from the testimony, and different conclusions may be reached as to the weight of the evidence, and whether or not it preponderates in favor of one party or the other. The jury has been constituted for the purpose of determining just such cases, and it is only where we can see that from passion, prejudice, or partiality the jury has gone wrong, or else that it has accepted unsatisfactory testimony, as of a single, uncorroborated witness, in lieu of more complete evidence adduced, which is fortified by the probabilities and circumstances surrounding the case, that we are justified in interfering with the verdict.

In the present case we do not think that the elements appear which would permit us to conclude that the jury was influenced by other than honest convictions, reached after considering the force of the evidence presented by the respective parties. The damages awarded, which were not excessive, do not indicate that the jury was affected by passion or prejudice, and the case is evidently one where different minds might naturally reach different conclusions.

As said, therefore, we do not think that we would be justified in interfering with the verdict, and the judgment and order must be accordingly affirmed, with costs. All concur.